PEOPLE ex rel. UNITED WOOD ALCOHOL CO. v. SHELDON et al., City Assessors.

(Supreme Court, Appellate Division, Fourth Department.  December 29, 1911.)

TAXATION (§ 496*)—ASSESSMENT—REVIEW—EVIDENCE.

   In a proceeding to secure a reduction of an assessment on the ground that other property of the same value was assessed at a lower valuation, evidence *held* to show that the assessment was correct; the property being of greater value than contended.

   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

   Williams, J., dissenting.

Appeal from Trial Term, Cattaraugus County.

Certiorari by the People, on the relation of the United Wood Alcohol Company, against Jesse A. Sheldon and others, as Assessors of the City of Olean. From a judgment and order for relator, defendants appeal. Order reversed, and writ quashed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Henry Donnelly, for appellants.
Allen J. Hastings, for respondent.

KRUSE, J. The reduction in the assessment of the relator's real property, which is challenged by this appeal, seems to be based upon the finding that the property was assessed proportionately higher than other property of the same class, making out, as it is claimed, a prima facie case of inequality which has not been overcome.

The property in question is a wood alcohol plant, not entirely completed and not in operation, consisting of about four acres of land upon which are located buildings and facilities for carrying on the business of refining wood alcohol. The relator purchased the land in 1907, and thereafter the buildings were constructed, costing upwards of $60,000. Before the plant was entirely completed, the relator leased it to the Wood Products Company, a corporation engaged in refining crude wood alcohol, at a stated annual rent of $20,000.

The lease, dated June 3, 1908, was for the term of one year. It contained a condition, however, that if for any reason certain contracts therein referred to between the Wood Products Company and certain other companies therein named were terminated, the lease should, upon notice as therein stated, be at an end. It seems that the other companies referred to in the lease were owned or controlled by the stockholders

of the relator, and, while the terms of the contracts are not stated in full, sufficient appears to show that they provide for the furnishing to the Wood Products Company of crude wood alcohol. There are other terms and conditions of the lease which need not be mentioned. The lease was not canceled, but on the 6th day of August, 1909, it was extended for the term of six months from January 1, 1910, subject to the same conditions as the original lease.

That was the situation in 1909, at the time the assessment in question was made, although the assessors had no knowledge, then, of the lease. The property was assessed at $50,000, the same as the preceding year. The relator objected, at the review, upon the ground that the assessment was excessive, unjust, and unequal and at a much higher rate than other properties, and particularly manufacturing plants and other property like that of the relator's. The relator's president was examined upon oath before the assessors, and the assessment was reduced to $35,000. The relator, still considering itself aggrieved, brought this proceeding, resulting in further reduction to $20,000.

On the hearing before the referee, five manufacturing plants were selected by the relator, claimed to be of the same class as that of the relator's property, and their value compared with that of the property in question. The five were a brewery, a flouring mill, two glass factories, and one other factory, all going concerns. If the relator's property is worth but $35,000, as the referee finds, and the five manufacturing plants are fairly illustrative of the assessments generally, upon the roll, the relator has a right to feel aggrieved, and the reduction of the assessment as made by the referee was justified. But I think the evidence does not satisfactorily establish the value of the property in question to be but $35,000; nor is the comparison of the property with that of the five manufacturing plants sufficiently extensive, as it seems to me, to be fairly illustrative of assessments generally upon the same roll, even if they are to be regarded of the same kind. The relator's president places its value at from $30,000 to $40,000, one other witness at $35,000, and the other, the contractor who constructed the buildings, at from $30,000 to $35,000; but the latter frankly admits that his estimate is based upon what he calls the slaughter value. The other witnesses, called by the relator upon the question of the value of the other plants, were not interrogated as to the value of the property in question. The opinions of witnesses called by the assessors upon the question of value tend to confirm the valuation of the assessors.

It seems to me, however, that the cost of this property, in connection with the lease and other surrounding circumstances, is entitled to more weight than the mere opinions of witnesses as to market value. This property cost upwards of $60,000 and was practically new. While the lease is uncertain as to its duration and may be terminated upon conditions therein named, it is not unreasonable to suppose that in that event the plant will be completed and become a going concern and used for the purpose of which it was intended. Whatever the underlying motive may have been which prompted the lease, and the surrounding circumstances and conditions which induced it to be made, the plant

is at least an important factor in producing the annual income of $20,000 to the relator. In fact, so far as the written documents before us show, the $20,000 is paid for rent of the property.

Of course, the conditions may change; but taking into consideration the condition of the property as it was at the time of the assessment, in connection with the other circumstances to which I have adverted, I think the assessors were right in leaving the assessment of $35,000, and that no injustice has been done to the relator thereby.

The order should be reversed, the writ of certiorari quashed, and the assessment confirmed, with costs. All concur, except WILLIAMS, J., who dissents.